v. McAllister, and we'll hear argument in the United States v. Tabor, 14-1222. May it please the Court, my name is Randa Mayer, and I represent the appellant Mohammed Tahir. Mr. Tahir is serving a 25-year sentence, essentially for conspiring to traffic marijuana from Canada into the United States and distribute it. By the time he is released, he will be 60 years old, and in all likelihood, given the current climate, marijuana will be legal. Mr. Tahir's convictions for CCE and related offenses should be reversed, based upon a number of separate grounds, as we've stated in our briefs. First, just to touch upon a few, there was prejudicial variance between the indictment and proof at trial, and although the indictment clearly charged a single, overarching conspiracy that began in January 2006 and allegedly continued through May of 2007, the evidence established multiple separate conspiracies existing during that time. Specifically, there were two separate conspiracies. The Detroit-Chicago-Buffalo transactions, I refer to them as the DCB transactions in my brief, those went from January 2006 to September 2006. Mr. Tahir was incarcerated at that time, and within a few weeks, that conspiracy ended. Is there not an instruction given by the district court on precisely this issue to ensure that the jury would not find him guilty of multiple conspiracies? What I have here is that the district court instructed the jury that it cannot quote, cannot find any defendant guilty of the single conspiracies charged in the indictment if it finds that those conspiracies didn't exist, and that proof of several separate independent conspiracies is not proof of the single, overall conspiracy charged in the indictment. So if it instructed the jury in the way that I just recounted, and that's in the joint appendix, then aren't we to assume that the jury understood that instruction? Well, in this particular case, the evidence was 25 different witnesses who testified, and notably, the jurors acquitted Khalil Albana. And there was a lot of evidence that showed that Mr. Albana had been involved in these transactions, the DCB transactions. The fact that the jurors acquitted Mr. Albana, Mr. Albana was the only bridge to the two conspiracies. And there was no overlap of personnel between what you claim were the different conspiracies? There was no continuing participation of people other than the defendant and the person who was acquitted? Yes. That is what I have stated in the brief as well. There were different core leaders for the first conspiracy. Those had not only was it Mr. Tahir, allegedly, but he had delegated to Bashir Saleh, to the Abdul Fattah and Eban Mossad, to Khalil Albana, who was acquitted. And with respect to the second conspiracy, that didn't begin until five months after the first one ended. That was a small potato sort of a thing at an Indian reservation. Mr. Tahir dealt only with one person, Bradley Parry, with small amounts of marijuana that Mr. Parry sold off to his friends. And the only person that Mr. Albana was not involved with that, the only person that was potentially involved with that, was somebody else that was never brought in as a witness, Yasin Abdullah. So there was- I've asked you before, Mark, maybe you should answer this. Are you saying that the only people who are alleged to have been involved in both conspiracies are the defendant and the person who was acquitted, and no one else was involved? There was one person's name who came up but was not brought in as a witness, and it's not really- I didn't ask you whether they were brought in as a witness. I asked you- There was one person's name that was brought up, Yasin Abdullah, and the government was supposed to produce him, but they didn't. There was a few isolated remarks by one witness to the DCB conspiracies that he had seen Mr. Abdullah. Sal Ahmed had said that he had seen Mr. Abdullah come once or twice when there was either money being picked up or drugs being delivered to Chicago. And Brad Parry had said he had seen Mr. Abdullah with respect to money transactions or accompanying Mr. Tahir when he came out to the reservation. But there was, in terms of the core leaders here, in terms of the main participants, there was no overlap whatsoever. Maybe the government will answer my question. I apologize. I thought I was doing that. I don't think you did. Would you like me to ask it again? I'm asking whether there was anyone, not whether they were witnesses, not whether they were core leaders. I'm asking you whether there was anyone who was alleged to be involved in both conspiracies other than the defendant and the co-conspirator who was acquitted. The only one that was alleged was Mr. Abdullah, and as I stated, it was isolated comments by one or two of the 25 witnesses that testified. Going to my third point, which also invalidates the CCE conviction, the conclusion of the jury that the evidence failed to establish that Mr. Tahir occupied a position of organizer, supervisor, and manager to five or more people because the jury was erroneously told it can include people who failed to satisfy the management requirement of the CCE statute. In its closing arguments to the jury, the prosecutor specifically named ten individuals that could be included by the jury in the five-person count, and among those people was Ray Bierwith, Sal Ahmed, Bradley Perry, and William Massary. However, as I put in my principle and reply briefs, the evidence failed to show that Appellate occupied the position of organizer, supervisor, or manager with respect to any of these four people, and the government's brief did not contest that. The court's final instructions to the jury on the CCE count exacerbated this error because the court expressly referred to the list of individuals that the government had listed during its summation and said, in charging the third element of CCE, said, you know these individuals were litanied off to you in the arguments. Thank you very much. You've reserved three minutes for rebuttal, is that correct? Okay, yes, I do. I thought I still had 40 seconds. It's going the opposite way. Oh, it is? Okay. Mr. Pimentel. May it please the court, Frank Pimentel for the United States with the U.S. Attorney's Office in Buffalo, the Western District of New York. First of all, with respect to your question, Your Honor, yes, there were several individuals who were involved at various times throughout the conspiracy, including some who did not testify at trial. There were individuals over in Ontario, Canada. There were the individuals that we laid out their testimony in our brief. There was, of course, Mr. Albana and the fact that he was acquitted. Let me make sure that we're on the same page. Yes. When I was asking your adversary, your adversary was arguing, if I understood it, where the government charged a single overarching conspiracy, the evidence required a finding that it was not a single overarching conspiracy but two separate conspiracies. And she said, what I understood the argument to be, that the only person who was alleged to be, apart from the defendant who was alleged to be involved in both, was somebody who was acquitted by the jury. So I asked, are you saying that there was no one else alleged by the government and shown by the government's evidence to be involved in both conspiracies? And I was never sure what answer I was getting. There seemed to be a concession that there was a Mr. Abdullah who, in addition to the acquitted person and the defendant, were involved in both. Now, are you telling me, are you saying that in addition to the defendant, the person who was acquitted, and Abdullah, there were also several others who were involved in, who the evidence showed were involved in both things that are being argued to be separate conspiracies? Well, we don't, Your Honor, we don't view it as two conspiracies to begin with, which is part of the problem. I know you don't, but I'm asking you whether there were several people who were involved in the two different focuses of operation that the defendant is arguing were two separate things. Yes, Your Honor. There were people in Canada, for example, that there was significant testimony about the people that were operating in Canada helping to supply the marijuana. They were involved throughout the whole thing. Both? Sure. But I guess more to the point, Your Honor, is that the prejudicial variance issue, it's a red herring. Conspiracy is not an element of CCE, and sort of the premise of the argument is that it is, but it's not. Now here, to the extent that either of the conspiracies that the defendant was convicted of or found guilty of prior to the government vacating the conviction or dismissing those convictions, Your Honor was correct in pointing out that the district court instructed the jury properly on multiple conspiracy theory. Why did the district court instruct the jury on that if the issue was irrelevant to a continuing criminal enterprise? Well, because there were conspiracy charges. There were substantive conspiracies charged. That's why. As individual elements of the continuing criminal enterprise. Well, if the jury chose to see it that way, but there was a CCE, and then there was a conspiracy to import and a conspiracy to distribute. The jury came back guilty on all of them. At least three, but it doesn't have to be conspiracies. It can be phone counts and that sort of thing. What happened with respect to the conspiracy counts related to the CCE charge? Well, again, assuming that the jury saw those as the three acts, we don't know which three acts or more that they, but the convictions, the conspiracy convictions themselves pursuant to Rutledge after the verdict, we moved to dismiss them. Because Rutledge says you can't be guilty ultimately of a CCE and a constituent conspiracy, and so we dismissed the conspiracy. So where is the, well, maybe I should ask your officer that, where's the prejudice? Well, that was one of the points in our brief, Your Honor, is that when you dismiss the conspiracy, that ameliorates any prejudice, conceivable theoretical prejudice. One of the arguments made by your adversary in that brief is that there was no presentation of a special verdict form to the jury in which the jury would answer with specificity who were the supervised persons, what were the component constituent offenses that composed the minimum of three CCEs. Did you ask that there be such a – No, we did not, and there's no – they didn't either. I know they didn't. I don't think it's an error of failure to do it, but it certainly is a good practice when something as confusing as the CCE, with all those elements requiring five supervised persons and three constituent offenses and so forth, it certainly simplifies matters to find out whether the jury has really found what is required to be found. Why don't you ask the court to give such a special interrogatory? Your Honor, that's something we may consider in the future, but, again, I guess our focus is what does Richardson require, and Richardson requires a unanimity instruction as to the three or more felonies, and that was clearly given here, properly so. Doesn't it also make a requirement of unanimity as to the identities of five supervised persons? No, Your Honor. There is no requirement in this circuit for that. And, in fact – The circuit has ruled that there is no such requirement? No, no, no, no. As far as I am aware, this circuit has not ruled either way on that issue. This hasn't been ruled. Correct. Now, there are – all of the circuits, from what I saw, I looked into this, the ninth, I believe, requires it, but the other circuits – and I didn't even finish this – but the third, the fourth, the fifth, the seventh, and the eighth, and that was when I quit, all said, you do not – there is no requirement for unanimity instruction on the five or more individuals. So there was no request from the defense or the government on that? No, that's right. So is this a plain error issue?  I wouldn't suggest it would be an error. In fact, I simply think it's a very good practice to accept that this is complicated. Sure. And I will convey that back to the office, Your Honor. As to the other arguments, we believe the CCE was properly alleged. To the extent the court even considers it, it was unpreserved. We're just running through this, so I don't want to interrupt, but I was somewhat troubled by some of the statements that were admitted. I can't hear. Can you talk into the microphone? Yes. I was somewhat troubled by some of the statements, the quote, post-arrest statements, that were admitted that they claimed were overly prejudicial. They said out on page six of their brief, you're not going to take my fucking money. If you write me a ticket, it will be the worst mistake you ever made. You'll be back living in the hood with us when I'm done with you, and a series of other statements that are along that line. I was somewhat troubled as to what relevance those statements had, other than to portray this person in a bad light to a jury. First, Your Honor, in response, it's important to remember the standard of review on this issue in this court. It's abuse of discretion. And the court has said that at this level, it maximizes the probative value and minimizes the prejudicial effect. Here, the relevance of those statements are, first of all, it is some evidence under 401 of possession or ownership of the money, the $21,000, which in turn is evidence of the marijuana trafficking. But you had other evidence of that in other statements that she isn't objecting to. But we're not limited, Your Honor, on the evidence that we can proffer on a charge. Just because we have some evidence doesn't mean we're not allowed to use other evidence. Some evidence in statements by him. I mean, this wasn't necessary, as I see it. It was totally cumulative. All of these statements from 4 to 10 were totally cumulative. He admitted it. He admitted it. He said there should be at least $300,000, right? There should be. There's $250,000 there. She's not arguing about the admissibility of those statements. Why did you offer them other than to prejudice them unfairly? Well, Your Honor, also one of the elements of CCE is the control of five or more other individuals. And this is evidence of the way he views other people, in this case a police officer, whom he didn't even know. What does that have to do with control over five other people? It's controlling disposition. His disposition, Your Honor, is one of putting himself above other individuals. The officer here did nothing more than tell Mr. Taher what he was doing, and the defendant chose to lash out at that. And to prove that he was a supervisor of five people? It's some evidence of that. It's 401 probative. Okay. Thank you very much, Mr. President. Thank you. Mr. Mayor. Just responding to that last comment, as we noted in our brief, this was highly prejudicial. The introduction of these statements was highly prejudicial. With respect to what the government just said, it didn't prove that Mr. Taher was supervising people under the CCE because he might have had a controlling disposition. He could have been the sweetest guy in the entire world, and if the proof showed that he controlled and supervised five people, his demeanor to the police officer was not relevant. And they had other evidence, as we noted, to prove important facts here. This had nominal, if any, probative value. This was not the only time that inflammatory evidence was introduced against Mr. Taher. As we noted in our briefs, he suffered from prejudice when Abdel Fattah Mossad was allowed to testify that Mr. Taher went to jail. I mean, he went away. This was not an isolated remark. It was an intentional remark. A defense attorney noted on the record that before Abdel Fattah Mossad made this comment, and he was well aware of the pretrial ruling, he had also said a couple of times before that that Mr. Taher had been unavailable. He also said that he and somebody named Musa Shohati had gone to collect money that Mr. Taher owed them, and that this occurred the day before Mr. Mohamed had to go away. Following the denial of the defense mistrial motion, Mr. Mossad again on cross-examination said, Mohamed, what was the word? Oh, he took a vacation. I mean, this is a sarcastic comment. It's designed to go behind the ruling, circumvent it, and it further proves that his words were deliberate. It wasn't a stray remark that was unintentional when he blurted out that Mr. Taher went to jail. And the meaning of his words actually illuminated the discussion of availability, unavailability.  The jury was aware once this was blurted out that unavailability and availability really meant when Mr. Taher was in jail, and these remarks were made multiple times in summation. In fact, the prosecutor himself said nobody, no record of motion caddy crossing between the time Mohamed Taher became unavailable until the time he got out, until the time he got out of where. Obviously, he was referring to Mr. Taher being in jail. In addition, there was prejudice by the court's protracted inquiry of the jury in light of the note that Mr. Taher allegedly had displayed, bangs are nice, trying to curry favor with the female juror. Once the judge knew that the jury had not seen the note, the fact he went on and on and on about it, linking it to Mr. Taher, he prejudiced him. There was no way the jury could forget this. And this was put on the Internet in a newspaper article the next day, judge revokes bail over defendant's note to jury. It wasn't something that nobody picked up on. And given the fact that Mr. Albana was acquitted and there was not, there was evidence that he was involved. It wasn't just one or two people who testified to his involvement. There was significant testimony that Mr. Albana was involved, yet the prejudice that Mr. Taher sustained was not sustained by Mr. Albana. And, you know, quite probably that may explain why Mr. Albana was acquitted and Mr. Taher got convicted. And the last thing I just want to comment on was what you had asked me about the individuals that were participating in both conspiracies. And I stick to my position that there was only Mr. Abdullah who was mentioned. There was. If Mr. Abdullah is enough, assuming that you're correct, why isn't it enough if Mr. Abdullah was a participant with the defendant in both sets of enterprises that you claim should be deemed to? Because I think with all due respect. It seemed to me that when I thought you were making the point that there was nobody who the defendant would have conspired with that was part of both, that because one guy was acquitted and the defendant conspired with X, Y, and Z with respect to a certain set of facts and with A, B, and C with respect to others, but there was nobody who the defendant conspired with that linked the two, you would be making an argument, a reasonably potent argument, that they can't be a part of the same conspiracy because there's no one who's involved in both parts. Well, with all due respect, you know, while you can hang your hat to some level on Mr. Abdullah, I don't think that looking at the evidence, that's a fair reading of what happened here. I mean, one or two of 25 witnesses testify that he accompanied Mr. Tahir. Nothing much more than that. And when you look at the differences between the aims of these conspiracies, one was massive amounts of drugs and money coming through internationally, Canada being distributed to major cities with multiple people helping Mr. Tahir, and then the other was a rinky-dink sale of marijuana to somebody on an Indian reservation who was disposing of it with the hope that he could get Mr. Tahir's Lexus if he, you know, sold enough of it. And then you've got this five-month gap in between the two conspiracies, and you've got Khalil al-Banna, who was supposed to have been carrying on the conspiracy while Mr. Tahir was in jail during those five months when, in fact, the jury acquitted Mr. al-Banna. So, you know, based on looking at the totality of the circumstances, I don't think it's fair that Mr. Tahir is sitting in jail for the next 25 years until he's 60 years old because two of the myriad witnesses mentioned Mr. Abdullah and nothing more when you look at the totality of the circumstances here. So we would, you know, request that these convictions be reversed and that if not based on these separate errors, then looking at the errors, the cumulative impact of all these.